## No. 19,870.

ROBERT A. THEOBALD, DIRECTOR OF REVENUE, *v.* THE
FORT COLLINS PRODUCTION CREDIT ASSOCIATION.
(370 P. [2d] 162)

Decided April 2, 1962

1

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. FLOYD B. ENGEMAN, Assistant, for plaintiff in error.

Mr. H. W. SEAMAN, Mr. CONRAD L. BALL, Mr. D. J. ROBINSON, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE SUTTON.

THE parties will be referred to herein as follows: Plaintiff in error as "Director" and defendant in error as the "Taxpayer."

The taxpayer, by appropriate proceedings, challenged the validity of a ruling by Theobald on January 18, 1960, assessing the taxpayer for alleged income tax deficiencies for the years 1955, 1956 and 1957. The director's contention was that part of the interest claimed as a business deduction by the taxpayer in the years in question was paid "on indebtedness incurred or continued to purchase or to carry tax exempt securities, the interest from which is exempt from taxes" in contravention of the terms of C.R.S. '53, 138-1-12 (2). The

trial court held for the taxpayer and the director urges reversal by writ of error.

The record discloses that the taxpayer was chartered in 1934 by authority of the Production Credit Corporation of Wichita, Kansas, which in turn was a United States Government Corporation created by Act of Congress, and later merged into the Federal Intermediate Credit Banks.

The taxpayer had two classes of capital stock, viz., non-voting A and voting B. Member borrowers were required to buy $5.00 of Class B stock for each $100.00 borrowed. When the loan was repaid the borrower was required to convert the B stock to A stock within two years, unless it had been previously sold.

The original capital of the taxpayer was furnished by Production Credit Corporation of Wichita, consisting of United States Government securities in the amount of $50,000.00, which was exchanged for 10,000 shares of A stock. Thereafter the Wichita Corporation re-purchased $1500.00 of the government securities to give the taxpayer cash for initial operating expenses. Until 1950 the Wichita Corporation purchased additional Class A stock from time to time in exchange for United States Government securities.

Under the Farm Credit Act of 1933 (12 U.S.C.A. 1138 c) and under the Rules and Regulations of the Farm Credit Administration, the taxpayer was exempt from all federal and state income taxes as long as the Wichita Corporation, an instrumentality of the federal government, owned any of its stock. Under that act and the rules and regulations mentioned, the limited purpose of the taxpayer was to advance credit to farmers for agricultural purposes when they could not secure it from other lenders. The rules required the taxpayer to carry a certain amount of its capital and surplus in United States Government Bonds and Federal Farm Loan Bonds.

Over the years the taxpayer acquired sufficient funds

from its operations *(borrowing needed money at 4% interest from the Wichita Corporation to lend to farmers at 6¼% interest)* that it re-acquired its stock held by the Wichita Corporation and thereby became subject to the Colorado income tax upon its net profits.

The evidence before the trial court was uncontroverted that *all funds used* by the taxpayer for the purchase or holding of tax exempt securities came either from capital contributions or accumulated earnings transferred to its Surplus Account. The Wichita Corporation not only never loaned the taxpayer money to make such purchases (though it in former years exchanged some for stock as previously noted) but it appears that it was prohibited by federal regulations from so doing.

The director's contentions fall within three groups:

1. From an accounting point of view no corporation can spend capital or surplus; that these are arbitrary bookkeeping terms designed merely to show excess, if any, of assets over liabilities, and asserts "You can only spend the assets which are represented by the surplus figure."

2. That no evidence of tracing of the funds used to buy the Government Securities was introduced; that all cash of the taxpayer flowed into three accounts and checks were drawn on these for operations, to make loans and to buy securities. He states that "it must follow, as a legal conclusion based on the record, that the funds obtained through the discount and direct borrowing (for the loans made up the farmers) are the *only* funds that went into the exempt government securities." (Emphasis supplied.)

3. Finally it is urged that the statute must be construed strictly against the taxpayer by virtue of the authority of *Bedford v. Hartman Bros.*, 104 Colo. 190, 89 P. (2d) 584, (1938) and the principles set forth in 85 C.J.S. Taxation, Sec. 1099, at page 772, both of which place the burden on one claiming a statutory deduction to clearly bring himself within the statute.

■ We turn now to the director's first point. The record discloses that the taxpayer at all times in question was amply solvent and could invest its funds as it saw fit, restricted only by the statute, the federal regulations and its articles of incorporation. At the time this action was commenced it was required by its charter and the Wichita Corporation to maintain $400,000.00 in federal tax exempt securities for the purpose of providing collateral to the Wichita Corporation on loans being discounted.

■ The director's second point relates to purchasing the securities out of the taxpayer's ordinary checking accounts. We find no merit to this argument. The evidence does not show that the "only" funds used were "through the discount and direct borrowing" operations. On the contrary, the evidence is that the excess funds on hand in the checking accounts were all that were used. The mere fact that the taxpayer had funds in such accounts, borrowed for the purpose of carrying on its regular lending functions, does not subject it to a tax liability. The statute should not be construed more broadly than to effect its obvious purpose, which is to deny interest deductions to those who borrow money to purchase or continue tax exempt securities. A quite similar federal statute was construed in *R. B. George Machinery Company, Petitioner v. Commissioner of Internal Revenue, Respondent,* 26 U.S. Board of Tax Appeals 594 (1932), where it was held that such a statute "* * * was not intended to penalize legitimate business or to deny it the right to deduct interest paid for borrowed money, which money was used for the purpose of carrying on its regular functions."

■ Turning now to the third point urged by the director, viz., that the statute is to be strictly construed against the claiming taxpayer. Though this has been the law in Colorado, see *Bedford,* supra, it has no application here. The evidence disclosed that the taxpayer had more than adequate surplus and capital to cover the amount of

exempt securities held by it. This alone was sufficient to establish prima facie its right to the deductions claimed, and this was further strengthened by showing its fund sources, the limitation on its borrowings and the federal collateral requirements. There being no evidence to the contrary, we cannot disregard the established facts and indulge in adverse presumptions as urged by the director. Whether borrowed funds were used for the purpose in question was a question of fact determined by the trial court adversely to the director. We find no basis for a contrary finding.

The judgment is affirmed.

MR. JUSTICE HALL and MR. JUSTICE McWILLIAMS concur.